# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 09-541

**SHERILL SMITH BARES**

**VERSUS**

**WARREN OVERTON BARES**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20040741
HONORABLE DAVID BLANCHET, DISTRICT JUDGE

**********

## BILLY HOWARD EZELL
## JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and J. David Painter, Judges.

**AFFIRMED.**

**Ronald D. Cox**
**P. O. Box 2105**
**Lafayette, LA 70502-2105**
**(337) 269-5729**
**Counsel for Plaintiff/Appellant:**
**Sherill Smith Bares**

**Philip Collins Kobetz**
**P. O. Box 80275**
**Lafayette, LA 70598**
**(337) 291-1990**
**Counsel for Defendant/Appellee:**
**Warren Overton Bares**

**Walter Marshall Sanchez**
**Sanchez Law Firm**
**901 Lakeshore Drive, Suite 1050**
**Lake Charles, LA 70601**
**(337) 433-4405**
**Counsel for Defendant/Appellee:**
**Warren Overton Bares**

**Jane Carolyn Ettinger**
**Booth & Booth**
**138 North Cortez Street**
**New Orleans, LA 70119**
**(504) 482-5292**
**Counsel for Defendant/Appellee:**
**Warren Overton Bares**

**Charles G. Fitzgerald**
**Cox Fitzgerald, L.L.C.**
**113 West Convent Street**
**Lafayette, LA 70501**
**(337) 233-9743**
**Counsel for Plaintiff/Appellant:**
**Sherill Smith Bares**

**Margaret A. Lalande**
**Preis & Roy**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**(334) 237-6062**
**Counsel for Defendant/Appellee:**
**Warren Overton Bares**

**EZELL, JUDGE.**

Sherrill Smith Bares appeals a trial court judgment denying her request to relocate to Sugar Land, Texas from Lafayette, Louisiana. After applying the twelve factors listed in La.R.S. 9:355.12, the trial court denied Sherrill's motion to relocate. Sherrill appeals the trial court judgment claiming that it erred in its application of the law in denying her motion to relocate. She also claims that the trial court erred in denying her motion to appoint a mental health expert under La.R.S. 9:355.8.

## FACTS

Warren and Sherrill were married on February 27, 1993. During the marriage, they had one child, Madeline, who was born on September 24, 1997. On February 11, 2004, Sherrill filed a petition for divorce. Apparently, this petition was abandoned as Sherrill filed another petition for divorce on December 27, 2006. Warren also filed a petition for divorce on February 6, 2007. On August 9, 2007, a judgment of divorce was rendered. On November 13, 2007, a consent judgment of joint custody was signed. Sherrill was named as domiciliary parent.

Shortly thereafter, on May 28, 2008, Sherrill gave notice to Warren that she intended to relocate to Sugar Land, Texas with their soon to be, eleven-year-old daughter. Warren filed an objection to the relocation on June 16, 2008. A hearing on the relocation issue was held on September 11 and 17, 2008. After reviewing the factors listed in La.R.S. 9:355.12, the trial court denied Sherrill's motion to relocate. Sherrill appealed the decision to this court.

## MENTAL HEALTH EXPERT

Sherrill first argues that the trial court erred in denying her motion to appoint a mental health expert pursuant to La.R.S. 9:355.8. Sherrill argues that the trial court abused its discretion in denying her request because the trial court obviously believed

the mental conditions of both parties were at issue since it had previously ordered mental health evaluations on both occasions when the divorce actions were filed.

Louisiana Revised Statues 9:355.8 provides that "[t]he court may promptly appoint an independent mental health expert to render a determination as to whether the proposed relocation is in the best interest of the child." In *Jarnagin v. Jarnagin*, 09-903, p. 8 (La.App. 3 Cir. 12/9/09), 25 So.3d 1028, 1034, this court recognized that the statute was "'unquestionably permissive.'" This court held that the spouse seeking the testimony of an independent mental health expert regarding the proposed relocation request could have obtained the testimony of a mental health expert without a court order.

In support of her position, Sherrill has cited *Leaf v Leaf*, 01-1417 (La.App. 4 Cir. 8/15/01), 796 So.2d 42, which held that a trial court erred in failing to order a mental evaluation in a child custody case under La.Code Civ.P. art. 1464 when the court had previously ordered mental health evaluations of the parties. The fourth circuit found that a prima facie case had been established that the mental conditions of the parties were at issue and good cause had been shown by the prior order of a mental health evaluation as required by *Williamson v Haynes Best Western of Alexandria*, 595 So.2d 1201 (La.App. 4 Cir. 1992), *writ denied*, 598 So.2d 376 (La.1992).

In the present case, the parents and child were evaluated by Dr. Kenneth Bouillion, a clinical child psychologist, in 2004 and 2007 following the filing of the petitions for divorce. Each time, Dr. Bouillion evaluated the parents and child separately several times. He also had co-parenting sessions with the parents. Dr. Bouillion testified at the hearing on the relocation issue regarding these sessions.

2

While Dr. Bouillon did not evaluate the family regarding the relocation issue specifically, he was obviously well versed with this family and the issues involved. Since the trial court had the benefit of Dr. Bouillion's testimony, we cannot say that the trial court abused its discretion in failing to appoint an additional expert on the issue of relocation.

## RELOCATION

Sherrill's next assignments of error concern the trial court's review of the evidence before it in denying her motion to relocate. She argues that the trial court committed legal error when it did not make a finding of good faith or best interest of the child as required by La.R.S. 9:355.13. Sherrill also claims that the trial court erred in disregarding Dr. Bouillion's testimony and in its consideration of the factors regarding relocation in La.R.S. 9:355.12.

Good Faith and Best Interest

Louisiana Revised Statues 9:355.13 places the burden of proof on the relocating parent to show that the proposed relocation is made in good faith and is in the child's best interest. While the trial court did not specifically use this language in its extensive oral reasons for judgment, a review of its reasons clearly reveals that the trial court considered the child's best interest and whether the relocation was sought in good faith. The trial court recognized that Sherrill was seeking a move to Sugar Land as a solution to problems she perceived she had in Lafayette and that she wanted to be closer to her family. The trial court specifically stated that it did not believe that Sherrill had orchestrated the move. Furthermore, throughout its oral reasons, the trial court continually referred to the benefits to Madeline in considering the relocation to Sugar Land as opposed to continuing to live in Lafayette. We find no merit to this assignment of error.

3

The last two assignments of error concern the trial court's consideration of the evidence before it: whether it considered Dr. Bouillion's testimony and whether it properly applied the twelve factors listed in La.R.S. 9:355.12. The "trial court's decision in a relocation matter is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion." *Jarnagin*, 25 So.3d at 1030 (*citing Curole v. Curole*, 02-1891 (La. 10/15/02), 828 So.2d 1094).

<u>Dr. Kenneth Bouillion's Testimony</u>

Sherrill argues that the trial court erred in disregarding the expert testimony of Dr. Bouillion. Sherrill argues that Dr. Bouillion's testimony establishes that Warren constantly pushed for more time with Madeline creating problems for the child. Apparently, Sherrill feels that a move to Sugar Land would be best for Madeline so that her father will not continue to push for more time with Madeline.

A review of the trial court's oral reasons for judgment reveals that, while it may have not continually mentioned Dr. Bouillion's testimony, it considered Dr. Bouillion's testimony when making its decision. Dr. Bouillion testified that Madeline is closer to her mom. However, her dad wants to spend equal time with Madeline and has made efforts to do so. Dr. Bouillion recognized that there were also times that Sherrill would visit with Madeline during Warren's set time, such as helping Madeline with her hair before school. During its oral reasons, the trial court recognized that the parties were adjusting to the consent custody agreement and how to approach it. It recognized that they still needed to time to figure out the best way to handle the custody arrangement. The trial court recognized that this was giving Sherrill some anxiety and also creating pressure on Madeline because of the conflicts between the parents. However, it obviously did not feel that this was a sufficient basis to grant Sherrill's relocation request.

4

Twelve Factors of La.R.S. 9:355.12

Sherrill's final argument is that the trial court erred in failing to individually consider the twelve factors in La.R.S. 9:355.12 and in denying her request to relocate. The trial court's oral reasons make it very clear that it considered each of the twelve factors listed in 9:355.12. It specifically addressed each factor and its considerations regarding that factor. Therefore, we will consider the evidence and whether the trial court abused its discretion in denying Sherrill's motion to relocate to Sugar Land.

The twelve factors to be considered in determining whether to grant a motion to relocate are:

(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.

(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.

(7) The reasons of each parent for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to

5

improve the circumstances of the parent seeking relocation of the child.

(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.

(10) The feasibility of a relocation by the objecting parent.

(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

La.R.S. 9:355.12(A).

Sherrill sought relocation to Sugar Land asserting that there were better job opportunities for her as a dental hygienist. She claimed that after working many years as a hygienist she suffers with shoulder pain. She testified that she has been offered a job in Sugar Land with a pediatric dentist and that working on children is easier than adults. She has tried to find work in Lafayette with pediatric dentists but has been unable to do so. She was fired from her last position as a hygienist after she informed the office of her intent to move to Sugar Land and was unable to commit to giving them three-months' notice if she planned on leaving.

The trial court acknowledged Sherrill's testimony regarding her employment situation but observed that Sherrill introduced no medical testimony or evidence that employment as a hygienist had caused her problems or that working on children would aid in helping her situation. While Sherrill testified that she could not find employment in Lafayette, the trial court believed that she could given the number of dentists in the area.

Sherrill also wants to move to Sugar Land for the educational opportunities it offers Madeline and because there are nice, family-friendly neighborhoods. Her sister and family live there and have children that Madeline is close to. Sherrill's mother

lives in Houston, and Madeline's half-brothers, twins born to Sherrill during her first marriage, go to college at SMU and Texas A & M. Sherrill also has two brothers that live in Dallas and another sister that lives in Houston.

The trial court recognized that Sherrill has a family-support system in Sugar Land. However, only one sister and her family live in Sugar Land. The trial court also felt that Madeline's brothers would have to drive to visit their mother and sister anyway and would drive wherever they lived. Madeline has lived all her life in Lafayette, and both boys also went to school in Lafayette before college. Furthermore, Warren's family, including his father and a brother and family, live in Lafayette.

The trial court agreed that Sugar Land offered very nice schools and neighborhoods. While the building and grounds of the school that Madeline attends in Lafayette is not as nice as the newer facility in Sugar Land, the trial court believed that Madeline was getting just as good an education since she was in the gifted program at LJ Alleman Middle School.

The trial court also recognized that Sherrill and Madeline presently live in a nice home in a nice neighborhood in Lafayette. This home is close to Warren's home. In the trial court's opinion, Lafayette offers nice neighborhoods similar to those in Sugar Land.

While the trial court recognized that the move to Sugar Land would enhance Madeline's relationship with her mother's family, the trial court was also concerned that Madeline was under the impression she would see her father just as much as she does now if she moved to Sugar Land. The trial court recognized that Warren is very involved in Madeline's life and sees Madeline on a consistent basis, which will not happen if Madeline moves to Sugar Land. The trial court felt it was important that

7

Madeline have meaningful contact with both parents.

While Sherrill thought it would be feasible for Warren to move his business to Sugar Land, Warren testified that it would not be. Warren works for the family-owned business, J. Maxim Roy, a property and casualty insurance business. He testified that when they were still married, he looked at the possibility of moving the business to Sugar Land but determined it would not work. He explained that the business is a Louisiana licensed business. He would have to hire new people in addition to the fact that most of his business is east of Lafayette.

Reviewing the record and the trial court's reasons for judgment, we cannot say the trial court abused its discretion in failing to grant Sherrill's motion to relocate to Sugar Land, Texas. Therefore, we affirm the judgment of the trial court. Costs of this appeal are assessed to Sherrill Smith Bares.

**AFFIRMED**